UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

STEPHEN COMETA,

               Plaintiff,

v.

                                               Case No. 5:18-cv-233-Oc-34PRL

BILLY WOODS, et al.,

               Defendants.

**ORDER**

**I. Status**

Plaintiff Stephen Cometa, a federal inmate, initiated this action on May 14, 2018, by filing a pro se Civil Rights Complaint (Doc. 1). In a July 5, 2018 Order (Doc. 8), the Court dismissed Defendants who were associated with penal facilities outside of Marion County, Florida, and directed Cometa to file an amended complaint, addressing only claims based on factually-related events that occurred in Marion County. Cometa filed an Amended Complaint (AC; Doc. 12) on July 20, 2018. On August 23, 2018, the Court dismissed the AC and directed Cometa to file another amended complaint. See Order (Doc. 18). In accordance with the Order, Cometa filed a Second Amended Complaint

(SAC; Doc. 20) on September 10, 2018. In the SAC, Cometa names the following Defendants: (1) Billy Woods, Sheriff of Marion County; (2) Major Bowen, an employee of the Marion County Sheriff's Office and Detention Bureau Chief for the Marion County Jail (Jail); (3) Marvin Shelton, Assistant Chief Executive Officer of Ocala Community Care (OCC); (4) Vilmarie Velez, M.D., OCC Medical Executive Director ; and (5) Torey Richards, OCC Director of Mental Health. He alleges that Jail and medical staff denied him adequate medical and mental health care, subjected him to subpar living conditions, and restricted his access to the grievance procedures and mail. As relief, he seeks monetary damages. He also requests that the Court direct the Bureau of Prisons to provide him with his prescribed medications and over-the-counter daily supplements that the Jail discontinued when he was arrested. See SAC at 7.

This matter is before the Court on Defendants Shelton, Richards, and Velez's Motion to Dismiss (OCC Motion; Doc. 46) with exhibits (Doc. 46-1) and Defendants Woods and Bowen's Motion to Dismiss (Motion; Doc. 47).[1] The Court advised Cometa that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 29). Cometa filed responses in opposition to the Motions. See Plaintiff's Opposition (Doc. 56); Response (Doc. 60). He also moved to strike the Motions. See First Cometa Motion (Doc. 60); Second Cometa Motion (Doc. 61) (collectively, Motions to Strike). Thus, the Motions are ripe for review.

---

[1] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

## II. Plaintiff's Allegations[2]

Cometa asserts that he experienced "several abusive situations" while housed at the Jail as a pretrial federal detainee at "various times" from December 13, 2016 (his arrest date) through 2018. SAC at 6. He states that he was housed at the Jail on a number of separate occasions because he was transferred intermittently to various federal prisons for mental evaluations. See id. He avers that he was detained from December 13th through December 22, 2016, at the Jail and informed the staff of his chronic illnesses (diabetes, sleep apnea, neuropathic pain, lower back and hip pain, and vision problems) and mental issues (post-traumatic stress disorder, anxiety, and depression). See id. at 8-9. According to Cometa, the Jail discontinued his medications (Metformin, Simvastatin, Duloxetine, Hydrocodone, Lyrica, Omeprazole, Lisinopril, Iron, and Aspirin) and over-the-counter vitamins (Fish Oil, Calcium, and Vitamins C and D) on December 13th. See id. at 6-7. He states that the Jail eventually provided Metformin and Lisinopril. See id. at 7. He complains that the staff unnecessarily placed him in the suicide prevention unit where he was subjected to visual body cavity searches in the presence of other inmates, overcrowded cells with urine and fecal odors and 24-hour bright lights, and given meals without utensils and no medications. See id. at 8-9. He asserts that he "lost consciousness while standing" on December 19, 2016, and struck his head on concrete. See id. at 9. He avers that he received a rudimentary examination and was returned to his cell with no

---

[2] The SAC is the operative pleading. In considering a motion to dismiss, the Court must accept all factual allegations in the SAC as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz and Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the SAC and may differ from those that ultimately can be proved.

medication or treatment for his "closed head injury" and pain that lasted more than thirty days. Id. He states that the Jail staff neither provided follow-up medical care nor informed the Seminole County Jail about his head injury. See id.

According to Cometa, he returned to the Jail's suicide prevention unit where he experienced subpar living conditions from April 2017 through May 2017. See id. at 9-10. He states that he informed the Jail's intake nurse that he had been deprived of sleep and oxygen for four months, and therefore needed a continuous positive airway pressure (CPAP) device. See id. at 9. He asserts that he arrived at the Federal Medical Center (FMC) in Butner, North Carolina, for "competency restoration" on June 7, 2017, and received a CPAP machine on August 11, 2017, as well as treatment for high blood pressure and blurred vision. See id. at 10. He states that the FMC doctor recommended "a simple operation" to restore his vision, but he was transferred back to the Jail before the doctor could perform the operation. Id. He also avers that he injured his left shoulder in October 2017, just before he left the FMC. See id.

Cometa asserts that his next stay at the Jail lasted from November 22, 2017, until early March 2018 when he returned to the FMC. See id. at 10, 12. He avers that when he returned to the Jail, he updated the medical staff about his mental health and medical needs. See id. at 10. According to Cometa, he informed the staff that his medical records "were lost in transit" and therefore they needed to ask for his updated medical history, but the staff was "unresponsive." Id. at 10-11. He states that he read the Bible daily to relieve the stress associated with the inadequate medical care until the staff confiscated his Bible during a shake down search on December 25, 2017. See id. at 11. He declares that he wrote several informal grievances, but never received any responses. See id. Cometa

4

asserts that the staff refused to permit him to file formal grievances, and therefore, he "staged a hunger strike" and informed the staff that he would not eat until he was allowed to file formal grievances. Id. According to Cometa, the staff retaliated against him after his four-day hunger strike by placing him in the suicide prevention unit where he was denied his CPAP machine and again subjected to subpar living conditions. See id. According to Cometa, the Jail staff then transported him to Monroe Hospital where the medical staff, at the direction of the Jail deputies, tortured him. See id. He describes the torture techniques as inserting a catheter, injecting powerful drugs without his consent, tearing off electrocardiogram leads, and causing the removal of "large amounts of hair." Id. He states that an outside ministry group replaced his Bible on February 14, 2018. See id. at 12.

Cometa returned to the Jail on July 2, 2018, at which time he informed the medical staff about his chronic illnesses, the corrective left-eye operation that was past due, and his injured left shoulder as well as his medication needs. See id. He declares that the medical staff took x-rays of his left shoulder in August 2018, but he never received the results. See id. at 10. According to Cometa, the staff assigned him to the infirmary where he experienced subpar living conditions, including a small overcrowded cell, bright lights, banging doors, and restrictive access to church, recreation, phones, and the law library. See id. at 12-13. He declares that the Jail and medical staff refused his requests to file formal grievances on the overcrowding issue as well as the restricted access to church, recreation, phones, and the law library. See id. Next, he asserts that the Jail's mail policy denied him the ability to effectively correspond by letter with his family, friends, and

5

elected officials as well as prison ministry and advocacy groups.³ See id. at 13. He concludes that the Jail denied his right to file formal grievances, and therefore he was never able to receive any relief through the Jail's grievance procedures. Id. at 8, 11-13. He states that the "few responses" he got were "unsatisfactory and offered no solution or remedy to the issues." Id. at 8.

### III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262 63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable

---

³ According to Cometa's exhibit (Doc. 20 at 14), the mail policy states: "Effective January 1, 2018 for the safety & security of the Inmates and the Department of the Jail, all Incoming and Outgoing mail, with the EXCEPTION of Privileged/Legal mail[,] must be in the form of a POST CARD ONLY."

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[4] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998)

---

[4] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

7

(internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

### IV. Summary of the Arguments

In the motions, Defendants request dismissal of Cometa's claims against them because Cometa failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), before filing the instant lawsuit. See OCC Motion at 3-8; Motion at 6-8. Next, they argue that Cometa fails to state plausible claims against them. See OCC Motion at 8-10; Motion at 4-5. In response, Cometa moves to strike the Motions, see Motions to Strike, and maintains that he was unable to exhaust the Jail's administrative grievance procedures because the administrative grievance procedure for electronically filing a formal grievance was unavailable to him, see First Cometa Motion at 1-5. Additionally, he contends that he states plausible claims against Defendants. See id. at 6-10.

### V. Cometa's Motions to Strike (Docs. 60, 61)

Cometa moves to strike Defendants' Motions. See Motions to Strike. However, he cites no authority for striking an opposing party's motions. Upon review of Cometa's Motions to Strike, the Court determines that they are due to be denied. Notably, Rule 12(f)(2), Federal Rules of Civil Procedure (Rule(s)) provides that, upon motion by a party, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, only material found in a "pleading" may be stricken pursuant to Rule 12(f). See Jeter v. Montgomery Cty., 480 F. Supp. 2d 1293, 1296 (M.D. Ala. 2007); Lowery v. Hoffman, 188 F.R.D. 651, 653 (M.D. Ala. 1999); Newsome v. Webster, 843 F. Supp. 1460, 1464-65 (S.D. Ga. 1994). Rule 7(a)

defines which documents constitute pleadings.[5] See Scarborough v. Principi, 541 U.S. 401, 417 (2004) (noting that Rule 7(a) "enumerat[es] permitted 'pleadings'"). Motions to dismiss or for summary judgment are not pleadings, as enumerated in the Rule. See Rule 7(a). Cometa's Motions to Strike are directed at Defendants' Motions, which do not constitute pleadings. Thus, the remedy of striking the documents is not appropriate, and Cometa's Motions to Strike (Docs. 60, 61) will be denied. Nevertheless, the Court will consider the arguments set forth in the Motions to Strike as well as the attached exhibits as responsive to Defendants' Motions.

## VI. Exhaustion of Administrative Remedies

### A. PLRA Exhaustion

The PLRA requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner such as Cometa is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there a

---

[5] Specifically, Rule 7(a) provides that "[o]nly these pleadings are allowed:"
(1) a complaint;
(2) an answer to a complaint;
(3) an answer to a counterclaim designated as a counterclaim;
(4) an answer to a crossclaim;
(5) a third-party complaint;
(6) an answer to a third-party complaint; and
(7) if the court orders one, a reply to an answer.

recognized exhaustion requirement, "the PLRA … requires proper exhaustion" as set forth in the applicable administrative rules and policies of the institution. Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Woodford, 548 U.S. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

In Ross v. Blake, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross, the Court identified three circumstances in which an administrative remedy would be considered "not available." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy

may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

The determination of whether an inmate exhausted his available administrative remedies prior to pursuing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion. Bryant, 530 F.3d at 1374-75 (citation omitted). Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

## B. Marion County Jail Grievance Procedure

The Jail provides an internal grievance procedure for its inmates. See Doc. 46-1 at 3-10, Marion County Sheriff's Office Operations Directive (Directive), Inmate Grievance and Request Procedures, §§ 6633.05 through 6633.50. Generally, to properly exhaust administrative remedies, an inmate must complete a four-step sequential process if the informal resolution procedures fail to resolve the issue.[6] To complete the formal grievance procedures, an inmate first must ask the on-duty Detention Deputy for an Inmate Request Form, complete the form "in its entirety," and request to speak to the Zone Sergeant about the issue and requested remedy. § 6633.35 B. 1., Step 1. Notably, the form "is not placed in the [electronic] Grievance System but forwarded through normal channels." Id. According to the Directive, a Sergeant contacts the inmate to try "to rectify the situation." Id. If a Sergeant "handles the situation, the process ends" at the first step, and the Sergeant notes "the corrective action" on the form. Id. If the inmate's complaint reaches beyond the Sergeant's responsibility, the Sergeant forwards the request to the appropriate supervisor. See id. If the Sergeant or appropriate supervisor cannot resolve the inmate's complaint, he directs the inmate to the electronic grievance computer located in each pod and initiates the log-in process. See § 6633.35 2., Step 2. According to the Directive, all "formal grievances" are submitted in the electronic grievance system. § 6633.35 3., Step 3. The "issuing Sergeant" begins "the grievance tracking process" by entering his name and identification number as well as the inmate's full name and housing

---

[6] An inmate first must present an issue of concern informally to staff who must attempt to informally resolve the issue before an inmate proceeds to the formal resolution procedures. See §§ 6633.25, 6633.35 B.

12

location. Id.[7] The inmate must state the remedy he seeks, describe "specific facts and circumstances directly relat[ed] to the complaint," and address "only one issue per form." Id. At the fourth and final step, the Watch Commander (or a designee) reviews and records each grievance received and forwards it to the staff member who is "best suited to answer the grievance." § 6633.35 4., Step 4. The staff member investigates the inmate's assertions and responds to the grievance. Id. The Division Commander and Administrative Watch Commander separately review the staff member's response. Id. If the Administrative Watch Commander opines that the response provided to the inmate is not "appropriate," he forwards the grievance to a Division Commander or the Detention Bureau Chief for "review and comments." Id.

### C. Cometa's Exhaustion Efforts

Defendants assert that Cometa failed to properly exhaust his administrative remedies as to the claims against them before filing the instant lawsuit. See OCC Motion at 3-8; Motion at 6-8. In support of their contention, Defendants submitted the relevant grievance exhibits. See Doc. 46-1 at 1-2, Affidavit of Loretha Tolbert-Rich (Affidavit); 46-1 at 3-10, Directive §§ 6633.05 through 6633.50. In an Affidavit, Tolbert-Rich (the Chief Executive Officer of OCC, which operates the infirmary and provides health care services to inmates who are housed at the Jail) states, in pertinent part:

> I am familiar with the Inmate Grievance and Request Procedures implemented by the Marion County Jail and adopted by OCC. A true and correct copy of these procedures [is] attached hereto as "Exhibit A" and [is] made a part of this Affidavit. Exhibit A was created by the Marion County Jail and made effective on October 1, 1999. Exhibit A is a regular

---

[7] The Jail's operations directive describes the "issuing Sergeant" as "the Sergeant who issued the grievance." § 6633.35 3.

> business record kept in the ordinary course and scope of business by Marion County Jail and OCC.
>
> Section 6633.35 of Exhibit A[,] titled "Formal Resolution of Grievances," outlines the procedures an inmate is required to adhere to when he cannot resolve his/her complaint through informal channels. Pursuant to same, an inmate is required to fill out a formal "Inmate Request Form" within thirty (30) days from the date the incident described on the complaint occurred.
>
> I have reviewed and searched the administrative remedy records for both OCC and the Marion County Sheriff's Office. There are no records of Plaintiff, STEPHEN COMETA, filing any formal grievances regarding the issues raised in the Second Amended Complaint as required by the Inmate Grievance and Request Procedures outlined above and in Exhibit A.
>
> The deadline for filing an administrative remedy is thirty (30) days from the date of the alleged incident. Based on the allegation in Plaintiff's Second Amended Complaint, the 30-day time frame has expired without the filing of a formal request for an administrative remedy.
>
> Based on this information, Plaintiff, STEPHEN COMETA, did not exhaust his administrative remedies with respect to the issues raised in his Second Amended Complaint.

Affidavit at 1-2 (enumeration and emphasis omitted).

Cometa maintains that he did not file any formal grievances because the administrative grievance procedure for electronically filing a formal grievance was unavailable to him. See SAC at 8, 11-13; First Cometa Motion at 3. In the SAC, he asserts that he repeatedly made Jail and medical personnel aware of his desire to file formal grievances about a wide variety of issues relating to his conditions of confinement and medical care. See SAC at 8, 12-13. He states that he wrote several informal grievances, and when no one responded, he requested to file formal grievances. See id. at 11. According to Cometa, the staff's "refusal to allow [him] to file formal grievances or provide

any solution or remedy to [his] complaints left [him] limited options." Id. In responding to Defendants' Motions, Cometa states:

> The Marion County Jail's grievance procedure requires inmates[] [t]o receive an "eventual determination" from the "Zone Serge[a]nt before obtaining access to the "electronic grievance form" that is required to file formal grievances. The "Zone Serge[a]nt" is required to log-on to the "electronic grievance system[.]" [O]nce access is granted[,] the inmate completes the "electronic form," [and] it is sent via e-mail to the watch commander for resolution.[]
>
> The plaintiff asserts he effectively exhausted his grievances that were made "available." Because he did not receive an "eventual determination" from the Zone Serge[a]nt" that is required to complete a[n] "electronic grievance form" he thus completed the administrative remedies available to him.
>
> . . . .
>
> [A]ll attempts by the plaintiff to file formal grievances were effectively denied, simply by the fact that the grievance procedure policy at the Marion County Jail was devised to include procedural requirements designed to trap unwary prisoners and thus defeat their claims and is harsh for prisoners, who are generally untrained in the law.[]

First Cometa Motion at 3-4. In support of his position, Cometa provides exhibits that show he requested permission to file formal grievances, see id. at 14-17, 34-35, 41-42, 45, and expressed his desire to access the electronic grievance system to file formal grievances, see id. at 34.

As to the initial step in the two-part process for deciding motions to dismiss for failure to exhaust under the PLRA, the Eleventh Circuit has instructed:

> Deciding a motion to dismiss for failure to exhaust proceeds in two steps: first, looking to the defendant's motion and the plaintiff's response, the court assesses whether dismissal is proper even under the plaintiff's version of the facts; and second, if dismissal is inappropriate under the plaintiff's version of the facts, the court makes "specific findings in order

15

> to resolve the disputed factual issues related to exhaustion." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The burden is on the defendant to show a failure to exhaust. Id.

Arias v. Perez, 758 F. App'x 878, 880 (11th Cir. 2019) (per curiam). Cometa's assertions regarding the unavailability of his administrative remedies, taken as true, preclude dismissal of the claims against Defendants at the first step of the Turner analysis. See Ross, 136 S. Ct. at 1860. Thus, the Court proceeds to the second step in the two-part process where the Court considers Defendants' arguments regarding exhaustion and makes specific findings to resolve the disputed factual issues related to exhaustion. See Jackson v. Griffin, 762 F. App'x 744, 746 (11th Cir. 2019) (holding disputes about availability of administrative remedies are questions of fact that can bar dismissal at Turner's first step).

In considering the availability of administrative remedies for exhaustion of Cometa's claims, the Court finds that he was not able to access the electronic grievance system to file formal grievances on his own. The Directive provides:

> Staff awareness of the importance of prompt attention and reply to routine requests will minimize the use of the formal grievance procedure. However, if the inmate finds that he/she is not satisfied with the informal proceedings, he/she shall not be hampered from utilizing the grievance procedure to its fullest extent.

§ 6633.25, Informal Resolution of a Grievance, Section B. According to the Directive, the Jail "encouraged" inmates to resolve their complaints through informal channels. See id. Nevertheless, while the Directive states that staff must not hamper an inmate's access to the administrative grievance procedures, it appears that there is a potential for such when an inmate cannot access the electronic system to file a formal grievance on his own. At the third step, the "the issuing Sergeant" is tasked with initiating the grievance by inputting

16

the preliminary and tracking information. § 6633.35 3. In the instant action, Cometa contends that he wanted to file formal grievances, but was not able to do so on his own. He has presented evidence that he expressed his desire to do so in his informal grievances, but apparently was not permitted to complete the process. As such, Defendants' Motions are due to be denied with respect to the exhaustion issue as to Cometa's claims against them.

### VII. Supervisory Liability

In Defendants' Motions, they also maintain that the Court should dismiss them from this action because Cometa neither asserts any claims against them, alleges any facts involving them, nor seeks any relief from them. See Motion at 4-5; OCC Motion at 8-10. Cometa maintains that he states plausible claims against Defendants Woods, Bowen, Shelton, Richards, and Velez. See First Cometa Motion at 6-11. According to Cometa, he names these supervisory Defendants because they failed to adequately train and supervise their subordinates who violated his rights. See id. at 10.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To avoid dismissal for failure to state a claim on which relief can be granted, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679.

Cometa is proceeding pro se in this action. The Eleventh Circuit has stated:

> A pro se pleading is held to a less stringent standard than a
> pleading drafted by an attorney; a pro se pleading is liberally

> construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003). Even so, a pro se pleading must suggest (even if inartfully) that there is at least some factual support for a claim; it is not enough just to invoke a legal theory devoid of any factual basis.

Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015). In the SAC, Cometa fails to provide any facts relating to Defendants Woods, Bowen, Shelton, Richards, and Velez. See Mack v. Miles, No. 19-11276, 2019 WL 5960221, at *2 (11th Cir. Nov. 13, 2019) (per curiam) (affirming the district court's dismissal of plaintiff's complaint for failure to state a claim and stating plaintiff "made no allegations of actual fact" regarding the defendant). The undersigned readily concludes that Cometa's SAC fails to state claims to relief that are plausible on their face as to Defendants Woods, Bowen, Shelton, Richards, and Velez because Cometa supplies no actual facts, much less sufficient facts to state any claims against these Defendants. As such, Defendants' Motions are due to be granted as to Cometa's claims against them.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1. Plaintiff's Motions to Strike (Docs. 60, 61) are **DENIED**.

2. Defendants Shelton, Richards, and Velez's Motion to Dismiss (Doc. 46) and Defendants Woods and Bowen's Motion to Dismiss (Doc. 47) are **GRANTED** to the extent that Defendants Shelton, Richards, Velez, Woods, and Bowen are **DISMISSED** without prejudice from the action. The Motions are **DENIED** with respect to the exhaustion issue as to Cometa's claims against them.

3. The Clerk shall enter judgment accordingly, terminate any pending motions, and close the case.

**DONE AND ORDERED** in chambers, this 11th day of February, 2020.

MARCIA MORALES HOWARD
United States District Judge

sc 2/11
c:
Stephen Cometa
Counsel of Record